CALDWELL et al. v. FIRTH.[1]

MILNER v. SAME.

(Circuit Court of Appeals, Fifth Circuit. December 13. 1898.)

No. 682.

**1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP—TEMPORARY RESIDENCE IN DISTRICT OF COLUMBIA.**

The fact that a complainant was required by his business to remain in the city of Washington much of the time for a number of years before the commencement of the suit and during its pendency, during which time his wife (he having no children) remained with him there, did not deprive him of his citizenship in a state where he had an established business, and where he continued to claim and exercise the right of citizenship.

**2. EQUITY PLEADING—AMENDMENT OF BILL—ALTERNATIVE RELIEF.**

Where a bill sought to charge the defendant as holding the title to an undivided interest in certain lands as trustee, upon the ground that he acquired the title with knowledge that his grantor held such interest in trust for complainant, an amendment bringing in the grantor as a party defendant, to meet an objection by defendant for defect of parties, and asking an accounting from such grantor, as trustee, for the value of the lands, is not an abandonment of complainant's right to relief against the original defendant, the two demands being based on the same transaction, and proper in the alternative.

**3. TRUST—RIGHT TO FOLLOW TRUST PROPERTY—LIABILITY OF TRUSTEE.**

Complainant being the owner of an undivided interest in certain lands, and about to leave the state, conveyed such interest to his co-tenant, in trust upon an agreement that the latter might sell the lands at not less than a minimum price named, and account to complainant for his share of the net proceeds. Eleven years later the trustee, not having sold any of the lands, conveyed the same to his co-defendant herein by a quitclaim deed on a settlement between them, intending to convey only his own interest, the grantee having knowledge of the complainant's interest. *Held*, the grantee not having made any further conveyance of the lands, that complainant was not entitled to an accounting by the trustee on the theory that he had sold the lands under the trust agreement, but could recover his interest in such lands from the grantee, subject to the payment by him of his proportion of necessary expenditures made thereon.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

This was a suit in equity by Margaret J. Firth, executrix of William Miller, Jr., deceased, against John T. Milner and Charles H. Caldwell and others, executors of Henry M. Caldwell, deceased, to enforce a trust in certain lands. From the decree the defendants severally appeal.

James Weatherly, for appellant John Milner.

Alex. T. London, for appellants Chas. H. Caldwell and others.

Joseph H. Parsons, John D. Rouse, and Wm. Grant, for appellee, Margaret J. Firth.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge. This was a suit in equity, begun by William Miller, Jr., alleging that he was a citizen of the state

[1] Rehearing denied February 21, 1899.

91 F.—12

of Colorado, against John T. Milner, a citizen of the state of Alabama. The original bill was filed December 28, 1889, and is as follows:

"Your orator, William Miller, Jr., of the city of Denver, in the state of Colorado, and a citizen of the state of Colorado, brings this, his bill of complaint, against John T. Milner, of New Castle, Jefferson county, Alabama, who is a citizen of the state of Alabama, and thereupon complains and says that the value and amount in controversy in this action, exclusive of all interests and cost, exceeds the sum of two thousand dollars. Your orator further says that on the 29th day of October, 1875, he was the owner in fee of an undivided one-third interest in the following described lands, to wit: Section 5, Tp. 16, R. 2 W. (except N. W. ¼ of N. W. ¼); section 7, Tp. 16, R. 2 W.; section 9, Tp. 16, R. 2 W. (except N. W. ¼ of N. W. ¼); section 19, Tp. 16, R. 2 W., —in Jefferson county, Alabama; that Dr. H. M. Caldwell, of Birmingham, Alabama, was the owner of an undivided one-third interest in said lands; that the defendant John T. Milner was then, or soon thereafter, the owner of the remaining undivided one-third interest in said lands. And in this behalf your orator further says that, being about to leave the state of Alabama at that time, and desiring a trustee to manage his interest in said lands, your orator and wife executed to and delivered to said H. M. Caldwell in pursuance of his said intention, a quitclaim deed for your orator's interest as aforesaid in said lands, which said deed is of record in the office of the judge of probate for Jefferson county, Alabama, in Book 24 of Deeds, at page 72; and, further, in the same behalf, that at the same time, October 29, 1875, your orator entered into two several agreements in writing, dated October 29, 1875 (copies of which are hereto attached and marked Exhibits A and B), with said Caldwell, defining the purposes for which the aforesaid quitclaim deed was executed and delivered, and likewise fixing the terms and conditions for any subsequent disposition of the lands in question. Your orator further says that thereafter, to wit, the 11th day of October, 1886, the said John T. Milner presented to the said H. M. Caldwell for signature a quitclaim deed conveying to himself, the said John T. Milner, the entire interest of said Caldwell in said lands as a partial settlement between themselves of their undivided interest therein, and that the said Caldwell did sign, execute, and deliver said deed to said John T. Milner, which said deed is of record in the office of the judge of probate for Jefferson county, Alabama, in Book 74 of Deeds, at page 415, having been filed for record October 12, 1886. In this behalf your orator says, upon information and belief, that the said John T. Milner was not only fully aware of the fact that the said Caldwell was in reality a trustee for your orator under the quitclaim deed to him, and that at that time your orator was the real beneficiary therein, but that these facts were at that time and at all times theretofore well known to the said John T. Milner. Your orator further says, upon information and belief, that the said Caldwell executed said deed as drawn under mistake and misapprehension of the fact that it conveyed the interest of your orator as well as his own; that, in fact, it had prior to that time, and subsequent to the execution of the said deed of October 29, 1875, to said Caldwell, been expressly agreed between the said Caldwell and John T. Milner, in a settlement of accounts between themselves as individuals, that Caldwell's one-third interest only in the 'Miller lands,' as the aforesaid property was described, should be conveyed. Your orator, further complaining, says that the said John T. Milner, in thus procuring the possession of the said lands, did so with the intent to appropriate the same to his own use, and to defraud your orator out of the same, and out of all interest therein, and out of all benefits, rents, and profits therefrom, and holds the same for his own use and benefit, with the fraudulent intent to deprive your orator of all benefit and interest therein. And in furtherance of said wrongful designs, thereafter, to wit, on the 12th day of October, 1886, the day after the date and execution of the instrument last described, the said John T. Milner caused said instrument to be filed for record in the office of the judge of probate of the county of Jefferson, in the state of Alabama, and which instrument is recorded in Book 74 of Deeds, at page 415. Your orator, further complaining, says that all the acts of the said John T. Milner in pro-

curing the execution and delivery of said deed as aforesaid, the violation of the agreement to buy only the said Caldwell's one-third interest aforesaid, and the recording of said deed, were all the execution of an unlawful scheme devised and conceived by the said John T. Milner to wrong and defraud your orator out of the said property as aforesaid. Your orator further says, upon information and belief, that the said John T. Milner has claimed and asserted ownership in said premises ever since that time, under and by virtue of the instrument hereinbefore described, and still asserts such ownership and title. Upon information and belief your orator says that the said deed so executed as aforesaid by the said H. M. Caldwell was not intended by him to convey the said property above described, or any part thereof, or any interest therein, directly or indirectly, to the said John T. Milner, over and above the one-third interest in the entire tract owned by the said Caldwell; that no consideration whatever moved to or was received by said Caldwell or your orator, or either of them, directly or indirectly, for the property of your orator above described, or for the execution of the aforesaid deed conveying the same to said John T. Milner. And your orator further says that the said John T. Milner ought not to be permitted to have, occupy, hold, and enjoy said real estate of your orator herein described, or any part thereof, but ought to surrender to your orator the said lands, for your orator submits that said John T. Milner, by his acts aforesaid, constituted himself a trustee for your orator; that he took possession of the lands so acquired and held, and still holds the same, as trustee for your orator, and he ought not to be allowed to assume any adverse or hostile relation, either by the fraud or fraudulent instrument aforesaid or otherwise, to your orator; and your orator insists that he ought also to account to your orator for the reasonable rents, issues, and profits of said lands for all the time he has had possession thereof as the same shall appear on an account to be taken and stated by one of the masters of this court. Wherefore, and forasmuch as your orator is without remedy by the strict rules of the common law, and can only have relief in this honorable court of equity, he prays the process of this honorable court to compel the appearance and answer of said John T. Milner, but not under oath, the oath of said Milner to the answer hereto being hereby expressly waived. Your orator further prays that this, his cause, may, with all convenient speed, be heard and tried; that it be by this court ordered, adjudged, and decreed that said John T. Milner procured said deed from said H. M. Caldwell, and held and occupied, and still holds and occupies, the real estate of your orator herein described, as trustee in trust for your orator; that said pretended deed so procured as aforesaid from said Caldwell, so far as concerns your orator's interest in the said lands, was, ever since has been, and is now, fraudulent, illegal, and void, and of no force and effect, and was not operative or available to grant, convey, and assign or transfer to said John T. Milner any title, interest, or estate whatever in or to said land, or any part thereof, and that said instrument is a cloud upon your orator's title, and be canceled; that the said John T. Milner never had any title, right, or interest in said lands except as trustee as aforesaid; that all bargains, grants, transfers, conveyances, and every instrument and contract or obligation of every nature executed by said John T. Milner purporting to grant or convey, or contracting to grant and convey, or otherwise in any manner to incumber or affect said lands, or any part thereof, affecting the other parties hereto who shall hereafter upon discovery be made parties to this bill, and who claim an interest therein adverse to your orator or otherwise, are null and void, and of no force and effect, and a cloud upon your orator's title, and be canceled; that your orator is the owner in fee of said lands, and all thereof, and entitled to the immediate possession thereof, and that the parties hereto claiming adversely to your orator do surrender, give up, and deliver possession of said lands, and every part and parcel thereof, to your orator, and that the said John T. Milner account for the rents, issues, and profits before one of the masters of this court, allowing him credit for all taxes and other necessary expenses in caring for said property; and, upon report being made of said account, that your orator have and recover the same from the said John T. Milner. And your orator prays that he may have such other and further relief as the nature of the case may require, and equity and good conscience approve."

On February 3, 1890, the defendant Milner filed an answer, relying on his bona fide purchase of the property, and on January 10, 1891, the complainant filed the general replication. On March 9, 1891, the answer of Milner was, by leave of the court, amended. On the issues thus presented testimony was taken, Caldwell and Milner both being examined at length. On the 23d day of June, 1892, the complainant asked leave to amend his original bill, and the following order was made:

"Come the parties by their attorneys, and, objection having been made by the respondent to the complainant's bill for want of proper parties thereto, complainant's counsel move the court to be allowed to amend his said bill by making H. M. Caldwell a party to said bill as a necessary defendant thereto, and said motion is now considered and granted by the court. And the complainant further moves the court to be allowed to amend said bill of complaint in accordance with the amendments hereto attached, but the defendant's counsel object to the allowance of said amendments, on the ground that they make an entire departure from the original cause of action as set forth in the original bill of complaint, and entirely new case; and because the said amendments cannot and should not be allowed at this late stage of the case. But said objections are overruled, and the said amendments are allowed, and the defendant John T. Milner is allowed until the first regular rule day in August to answer, plead, or demur to said bill as amended.

"This June 23, 1892.          John Bruce, Judge."

The amended bill, filed June 27, 1892, is as follows:

"(1) Your orator, William Miller, Jr., of the city of Denver, in the state of Colorado, and a citizen of the state of Colorado, brings this bill of complaint against John T. Milner, of New Castle, Jefferson county, Alabama, who is a citizen of the state of Alabama, and H. M. Caldwell, of Birmingham, in the same county and state, who is a citizen of the state of Alabama; and thereupon complains and says: (2) The value and amount in controversy in this action, exclusive of all interest and costs, exceeds the sum of two thousand dollars. (3) Your orator further says that under a contract dated December 30, 1870, he purchased from the Alabama & Chattanooga Railroad Company, through its duly-constituted land commissioner, the following lands, to wit: Sec. 5, Tp. 16, R. 2 W. (except N. W. ¼ of N. W. ¼); Sec. 7, Tp. 16, R. 2 W.; and that under a like contract dated November 16, 1870, he purchased from said Alabama & Chattanooga Railroad Company, through its said land commissioner, the following lands, to wit: Sec. 9, Tp. 16, R. 2 W. (except N. W. ¼ of N. W. ¼); Sec. 19, Tp. 16, R. 2 W. [written on margin in ink: "Sec. 17 also"],—all of the foregoing having been granted to said company under the act of congress approved June 3, 1856, and all lying and being in Jefferson county, Alabama. (4) That Dr. H. M. Caldwell, of Birmingham, Alabama, was the owner of an undivided one-third interest in said lands. (5) That the respondent John T. Milner was then, or soon thereafter, the owner of the remaining undivided one-third interest in said lands. (6) And in this behalf your orator further says that, being about to leave the state of Alabama at that time, and desiring a trustee to manage his interests in said lands, your orator and his wife executed to and delivered to said H. M. Caldwell, in pursuance of said intention, a quitclaim deed for your orator's interest as aforesaid in said lands, which said deed is of record in the office of the judge of probate for Jefferson county, Alabama, in Book 24 of Deeds, at page 72; and, further, in the same behalf, that at the same time, October 29, 1875, your orator entered into two several agreements in writing dated October 29, 1875 (copies of which are hereto attached and marked Exhibits A and B), with the said Caldwell, defining the purpose for which the aforesaid quitclaim deed was executed and delivered, and likewise fixing the terms and conditions for any subsequent disposition of the land in question. (7) Your orator further says that thereafter, to wit, the 11th day of October, 1886, the said John T. Milner presented to the said H. M. Caldwell for signature a quitclaim deed

conveying to himself, the said John T. Milner, the entire interest of said Caldwell in said lands as a partial settlement between themselves of their undivided interest therein, and that the said Caldwell did sign, execute, and deliver said deed to said John T. Milner, which said deed is of record in the office of the judge of probate for Jefferson county, Alabama, in Book 74 of Deeds, at page 415, having been filed for record October 12, 1886. In this behalf your orator says, upon information and belief, that the said John T. Milner was not only fully aware of the fact that the said Caldwell was in reality a trustee for your orator under the quitclaim deed to him, and that at that time your orator was the real beneficiary therein, but that these facts were at that time and at all times theretofore well known to the said John T. Milner. (8) That by the terms of the trust agreements hereto attached as exhibits to this bill it was expressly agreed by the said H. M. Caldwell that he should manage and sell your orator's interest in said lands, receiving a reasonable compensation for so doing, but at a price of not less than $25 per acre, or to buy each other out, but at no less price unless otherwise mutually agreed. (9) That said trustee, by deed dated October 11, 1886, did sell the interest of your orator in the aforesaid lands to said John T. Milner, in violation of the obligations and agreements of his said trust. (10) And in this behalf your orator further states that his said trustee, H. M. Caldwell, never informed your orator that he had disposed of your orator's said interest, and never rendered any account of his trust to your orator, though often requested so to do. (11) Your orator further says, upon information and belief, that the said John T. Milner has claimed and asserted ownership in said premises ever since that time under and by virtue of the instrument hereinbefore described, and still asserts such ownership and title. (12) That no consideration whatever moved to or was received by your orator, directly or indirectly, from said Caldwell or said Milner, or any other person, for the property of your orator above described, and conveyed in said deed of October 11, 1886. (13) Wherefore, and forasmuch as your orator is without remedy by the strict rules of the common law, and can only have relief in this honorable court of equity, he prays the process of this honorable court to compel the appearance and answer of said John T. Milner and H. M. Caldwell, but not under oath, the oaths of said Milner and Caldwell to the answer hereto being hereby expressly waived. (14) Your orator further prays that this, his cause, may, with all convenient speed, be heard and tried; that it be by this court ordered, adjudged, and decreed that said H. M. Caldwell was a trustee upon express trust for your orator, and as such held and occupied the property of your orator herein described; that said H. M. Caldwell, as trustee as aforesaid, sold said property of your orator, and that he account to your orator for the disposition of the property of your orator herein described in accordance with the express conditions of said trust agreements herein exhibited, and likewise that he account for the rents, issues, and profits before one of the masters of this court, allowing him credit for all taxes and other necessary expenses in caring for said property, and also a reasonable compensation for his services under said trust agreements, also credit for complainant's unpaid share, if any, of the purchase money of the lands herein described, with lawful interest thereon; that it be further ordered, adjudged, and decreed by this court that a lien in favor of your orator be declared upon the aforesaid lands to secure your orator the price of the said lands and interest thereon, as agreed between your orator and his said trustee. And your orator prays that he may have such other and further relief as the nature of the case may require, and equity and good conscience approve."

To this amended bill Caldwell filed his demurrer, assigning the following grounds:

"(1) The amended bill is inconsistent with the original bill filed herein. (2) The amended bill is a departure from the cause of action set up in the original bill. (3) It appears from the original bill that the complainant has thereby elected to confirm the conveyance by this defendant to John T. Milner, and to charge Milner as a trustee, and, having so elected, is concluded. (4) It appears from the original and amended bills that, if the complainant had a

right to proceed against this defendant as for a breach of the alleged trust, and compel this defendant to account for the proceeds of such breach of trust, he also had the right to affirm the conveyance by this defendant, and proceed against John T. Milner to hold him as a trustee for his alleged interest in said lands; and by the original bill the complainant has elected to affirm the conveyance by this defendant to Milner, and is concluded by his election. (5) It appears by the plaintiff's own showing that he is not entitled to the relief prayed by the amended bill against this defendant."

And thereafter the complainant, on leave, amended his amended bill by inserting at the end of paragraph 10, the following:

"That the facts which have induced orator to make said Caldwell a party to this suit, and to ask for the relief now prayed for in the amended bill, and which relate to said Caldwell's breach of trust as averred, were not known to your orator till disclosed by the evidence in this cause; that your orator filed his said bill relying upon the disclosures and representations made to orator by his said trustee; that, if the facts now disclosed by the testimony had been known to your orator when his said original bill was filed, he would have prayed for relief as herein."

The case was submitted on the demurrer of Caldwell, and the demurrer was overruled. On the 13th day of December, 1893, Caldwell filed his answer, in which he denies that the complainant was a citizen of the state of Colorado, and that complainant ever had any title to sections 5 and 7, and avers that whatever title to section 17 he ever had he parted with in 1874. He admits that the complainant was the owner of a one-third undivided interest in sections 9 and 19, and that Milner also owned a one-third interest therein, both interests subject to certain charges and liens. He admits the execution by the complainant of the quitclaim deed described in the bill, and the execution by the respondent of the agreements attached as Exhibits A and B to the bill. He then avers that large sums are due to him on account of said lands, no part of which has ever been paid, and admits that he executed a quitclaim deed to Milner on October 11, 1886, on a partial settlement between him and Milner in pursuance of an agreement entered into December 30, 1884, a memorandum of which was then made and signed by both respondents. · He denies that he ever intended to convey Miller's interest in the lands, and avers that Milner was fully advised of Miller's interest in said lands in 1884, and when said deed was executed. He denies that the complainant is entitled to any interest in said lands except upon the payment by him of the amount expended for him in procuring the titles, and denies that the terms of the agreements with the complainant are truly stated in the bill, and refers to the originals. He avers that, if the legal title to Miller's interest in said lands passed by the quitclaim deed of October 11, 1886, Milner took it subject to the complainant's equity, upon being reimbursed the sums expended for the complainant. He denies that he never informed the complainant of the execution of the deed, and avers that he gave to the complainant's solicitor full and accurate information about the lands and the deed and every fact and circumstance in any way connected therewith, and that the original bill was filed with a full knowledge of all the facts. He admits that Milner has asserted title to the lands since the filing of his answer in this cause, and that no consideration for the deed moved to the complainant. He avers that the lands were purchased on speculation, and all the money was ad-

vanced by the respondent; that the complainant never invested one dollar, and the consideration of the agreement with the complainant wholly failed; that the complainant left the state in 1875, and from that time until shortly before the bill was filed, in 1889, he heard nothing from the complainant; that the claim is a stale demand, and barred by laches; that at no time since the lands were bought, in 1870, has the complainant ever had a dollar at risk in the lands; that the only interest the complainant was to have was one-third of the profits arising out of the sale of the lands; that the lands could not be sold for $25 per acre; and he submits that he was not bound to hold the lands for an unreasonable time in order to enable the complainant to realize a profit therefrom, and that before the complainant could complain he was in equity and good conscience bound to repay the money advanced him for the purchase of the lands.    He denies that the complainant has ever offered to reimburse him for such moneys, and avers that he held the lands for 11 years, and that during that time the complainant made no demand or claim of any kind or description to the same, and never made any claim on him until the filing of the amended bill.

The case lagged along.    The complainant died, and his executrix, by bill of revivor, became complainant.    The respondent Caldwell died, and his legal representatives became parties, and in October, 1897, the final decree was passed, in these terms:

"This cause, coming on to be heard at the March term, 1897, of said court, is submitted for final decree to be rendered in vacation, by agreement of counsel, on the pleadings and testimony as noted; and it is considered by the court that the complainant is entitled to the relief as prayed for in the bill as amended. It is therefore ordered, adjudged, and decreed that the late Henry M. Caldwell was, under the agreement attached as exhibits to the original and amended bill, the express trustee for the complainant's testator, William Miller, Jr., of an undivided one-third interest in and to the lands set out in the pleadings in this cause, and more particularly hereinafter mentioned, subject to the terms and conditions of said trust agreement.    And, it appearing to the court that the defendant John T. Milner was not a bona fide purchaser, for value, without notice of the trust, but with notice of the same, did, on the 11th day of October, 1886, purchase from said H. M. Caldwell the realty, subject to said trust, to wit, sections 5, 7, 9, and 19, township 16, range 2 west, in the county of Jefferson, state of Alabama, containing two thousand four hundred and eighty acres of land, at the expressed price of $1,800; and whereas, the said Milner well knew that said trustee had no power under said agreement to sell the said lands, or any part thereof, for less than $25 per acre; and it appearing further from the evidence that the interest of the complainant's testator's estate in said lands was one-third of two thousand four hundred and eighty acres, but that by reason of a compromise made by John T. Milner upon the claim of an adverse title by suit to said sections 5 and 7 this amount was reduced by one thousand and eighty acres to, namely, one thousand four hundred acres, and also that on the settlement made by said Milner with the holders of said adverse title, May 16, 1887, one hundred and sixty acres of land, to wit, N. E. ¼ section 5, township 16, range 2 west, was deeded to him June 16, 1887, in settlement for the joint title of said William Miller, Jr., H. M. Caldwell, and John T. Milner to said lands in said sections 5 and 7; and it further appearing to the court that the said one thousand four hundred acres of land were, at the time the same were purchased by said Milner from said Caldwell, as well as the date when this suit was begun, worth the price of $25 per acre, that this was the minimum price fixed therefor by said trust agreement, and that one-third of said lands is four hundred and sixty-six and sixty-six one-hundredths acres, which, at the price of $25 per acre, is $11,666.50, the interest on which from October 11,

1886, the date of the deed from H. M. Caldwell to John T. Milner, to the date of this decree, is $10,281.98, making an aggregate of $21,984.48, to which the complainant, as such executrix, is entitled as and for the purchase money for her testator's said interest in said lands,—from which amount must be deducted $836, the same being one-third of the balance of the purchase money for sections 9 and 19, May 1, 1877, together with the interest on the same from the 1st of May, 1877, to the date of this decree, amounting to $1,483, or $2,319 in all,—as a credit in favor of said H. M. Caldwell, which, being deducted, leaves a balance of $19,629.48 due by said defendants to the complainant as such executrix: It is therefore ordered, adjudged, and decreed that the complainant, as executrix of the last will of said William Miller, Jr., deceased, have and recover of the defendants John M. Caldwell, Charles H. Caldwell, and Charles O. Locke, as executors of the estate of Dr. Henry M. Caldwell, deceased, the sum of $19,629.48, together with the costs in this behalf expended, the same to be paid, within twenty days from date hereof, to said complainant; and, in case said amount shall not be so paid to said complainant within said period of twenty days, let execution issue to be levied of the goods and chattels of the estate of said Henry M. Caldwell, deceased. It is further ordered, adjudged, and decreed that in case said sum cannot be collected by said executrix against said defendants, then, upon return of said execution by the marshal of this court showing such fact, the clerk of this court, as master, he being the most suitable person, will proceed to sell the following parts of said lands so purchased from said Henry M. Caldwell October 11, 1886, by said John T. Milner, to wit, the N. E. ¼ of section 5, all of section 9, except N. W. ¼ of N. W. ¼, and all of section 19, in township 16, range 2 west, in Jefferson county, Alabama. This decree being hereby made a lien on the said lands until the amount adjudged hereby and all costs of this suit are paid. The sale of said lands hereinbefore provided for to be made after thirty days' notice of the time and place of such sale given by publication in some newspaper published in the city of Birmingham, Alabama, the said notice to be inserted once a week for four consecutive weeks. Said sale to be at public outcry in front of the federal building in said city of Birmingham, to the highest and best bidder for cash; and the master will report his action in this behalf within thirty days from the date of said sale to this court."

On October 22, 1897, by consent of parties, the decree was so amended as to limit the lien and the order for sale to the undivided one-third interest in the lands set out in the decree.

From a careful consideration of the testimony we conclude that the circuit court did not err in overruling the respondents' motions to dismiss the suit for the want of jurisdiction. The ground of those motions was that the complainant was not a citizen of Colorado, but was a citizen of the District of Columbia. The proof shows that in 1883 he was engaged in business in the state of Colorado; that he claimed and exercised civil rights as a citizen of Colorado during the period from 1883 to 1889, in which last-named year he voted in Colorado as a citizen thereof, and did not, from 1883 to the time of his death, exercise the right of suffrage in any other state, territory, or district; that his business, both before and after the year 1889, took him to Washington City, and detained him there much of the time; that his family consisted of himself and his wife, they having no children; that she went with him wherever he went, and remained with him where and as long as his business detained him at any given point; that she was, therefore, with him in Washington City during much of the time from 1883 to the time of his death, but that during all of this time his business relations in Colorado subsisted and had his attention, and he did not give up or contemplate giving up his domicile and citizenship in Colo-

rado, and was detained at the capital by reason of the nature of his business requiring much of his personal attention to be given to it at that place. We conclude, also, that the circuit court did not err in finding that Henry M. Caldwell was the express trustee for the complainant's testator, William Miller, Jr., of an undivided one-third interest in and to the lands set out in the pleadings in this cause, and that John T. Milner was not a bona fide purchaser of the lands for value, without notice of this trust, but that, with notice of the same, he took the conveyance of the lands on the 11th of October, 1886.

The appellant Milner contends that the complainant, by making Caldwell a party, and seeking the relief which is sought against him in the amended bill, after the evidence had all been taken, and the facts fully disclosed, elected to proceed against Caldwell, as trustee, for the recovery of the stipulated value of the lands, and thereby abandon all claim of right to relief against Milner. In 1870, and for many years before that, and for several years after, Milner and Caldwell were associated in business in the conduct of various corporations and firms, and in speculative ventures had by them as individuals. They were closely connected by domestic ties, each having married a sister of the other. From 1858 to 1872 Milner was the engineer and superintendent of the North & South Alabama Railroad Company, and after 1872 was connected with that company as consulting engineer, until 1875. He had the general reputation of possessing superior knowledge with reference to coal deposits in the county of Jefferson, in Alabama. In 1870 the Alabama & Chattanooga Railroad Company was offering for sale the lands which are in controversy in this suit, and Milner suggested to Caldwell that, if they could acquire these lands, they would make a good profit on them. On account of his reputation in reference to possessing a knowledge of coal deposits, he thought it was best that he should not make the application in person for the entry of these lands, and by reason of the intimate connection between himself and Caldwell it was concluded that they had better procure the application to be made through and in the name of a third person. William Miller, Jr., the original complainant herein, was at that time a prominent citizen of Alabama, was intimately acquainted with and in daily association with Caldwell, and at Caldwell's instance, inspired by Milner's suggestion,—which suggestion, however, was not communicated at that time to Miller,—he was induced to make the application in his own name, but really for the benefit of himself only to the extent of a one-third undivided interest, and for the benefit of Caldwell, or, as it developed, of Caldwell and Milner, to the extent of the other two-thirds interest. Some of the lands were taken at the price of $2.50 per acre, the rest at the price of $3 per acre, one-fourth to be paid in cash, which was paid by or through Miller, and the remainder to be paid by the purchasers in installments. It developed that there was a conflict between the claim of the Alabama & Chattanooga Railroad Company and the North & South Alabama Railroad Company as to the lands here in controversy, to meet the contingencies of which conflict Milner, on the 2d of December, 1872, procured an agree-

ment to be entered into by the North & South Alabama Railroad Company, party of the first part, with William Miller, Jr., of Butler county, Ala., party of the second part, by which the interest represented by William Miller, Jr., was to be protected. Up to this time there was no writing in existence to show the interests of Caldwell and Milner in these lands, and Milner became restless on account thereof, and urgent in his advice to Caldwell to obtain a conveyance from Miller of the two-thirds interest which Miller in fact held in trust. For some reason, not disclosed, this conveyance was not made until December 2, 1874, and, for reasons not disclosed by the record, it was then made, not to Caldwell and Milner, or to Caldwell for himself and Milner, but in the form of a quitclaim deed directly to Caldwell alone for the two-thirds undivided interest in the lands. It was discovered that section 5 (except the northwest quarter of the northwest quarter, and the southeast quarter of the southeast quarter), and all of section 7, had been sold to James A. Curry by the land commissioner of the Alabama & Chattanooga Railroad Company before the sale by him of the same lands to William Miller, Jr. These difficulties about the title, or other difficulties which had not been overcome, delayed any operation upon or disposition of these lands by the beneficiaries under Miller's purchase, until in October, 1875, it became necessary for Miller to leave Alabama on account of the condition of his wife's health; and, that his interest might be represented efficiently and duly protected, he conveyed his undivided one-third interest in the lands to Caldwell, who already held the apparent title to the other two-thirds, giving him thereby full authority to represent and dispose of the interest thus conveyed, and taking at the same time, but in a separate paper, a memorandum in writing declaring the trust on which the conveyance was made, and specifying particularly the minimum limit of the price which Caldwell was authorized to accept in case he made a sale of Miller's one-third interest. In search of health for his wife, Miller went with her to Europe, and later, returning to this country, he went with her to the state of Colorado, and on this account, and on account of other business in which he engaged, did not return to Alabama. On the 1st of May, 1877, the title which Miller had purchased to sections 9, 17, and 19 was recognized and confirmed on the terms which Miller had obtained, and the unpaid purchase money was then paid by or through Caldwell, who received a deed to all the land in his own name from the proper authority. Before December 30, 1884, the business and social relations between Milner and Caldwell had become very much strained, and there had been futile attempts by them to have a full settlement of their business affairs. On the last-named date they reached an agreement, and signed a memorandum thereof, one clause of which is in these words: "Milner Coal & R. R. Co. buys Caldwell's third interest in Miller's lands at $1,240." This agreement was not immediately carried out, and it does not appear that any substantial effort was made to consummate it until October 11, 1886, when a full settlement was had between them, one feature of which was that Caldwell and his wife executed and delivered to

Milner a deed by which they remise, release, quitclaim, and convey to him "all their right, title, and interest or claim in and to the following described real estate, to wit" (describing accurately the lands involved in this suit). There was still pending the controversy in reference to the title and possession of sections 5 and 7, to determine which an action had been brought in the proper court against Milner and Caldwell, and on June 16, 1887, as the result of a compromise of this action, Swann & Billups conveyed to John T. Milner 160 acres in section 5, receiving therefor no consideration except the relinquishment of his claim to sections 5 and 7, which claim rested entirely, so far as this record shows, on the original purchase of William Miller, Jr., a history of which has just been traced. After these transactions, William Miller, Jr., the original complainant, employed counsel to look into his affairs in Alabama, and his counsel, after examining the records, and interviewing both Milner and Caldwell, brought this suit as shown by the original bill. In his original answer thereto John T. Milner, the respondent, states and pleads that, according to the theory of the bill, and under the facts stated therein and in this answer, "the said bill should be dismissed for the nonjoinder of said Henry M. Caldwell as an indispensable party to this suit. Said Caldwell resides in Birmingham, Jefferson county, Alabama, and is within the jurisdiction of this court." It is evident that the original bill was framed on information derived largely from Caldwell. It is equally evident that the amended bill by which Caldwell was brought in and made a party is framed on the averments of fact contained in Milner's answer and in his testimony. Besides the deeds and written agreements already referred to and sufficiently set out, there was substantially no material testimony except the depositions of the three original beneficiaries in the purchase of these lands,—Milner, Caldwell, and Miller. Their examination was full, and their answers, and arguments contained in their answers, show the transactions from beginning to end. There is sharp conflict, but there is nothing in the pleadings or the proof pointing to any other case than the case made by the admitted dealings of the parties, and the amendments tendered and permitted did not put upon the court or the parties any undue labor or inconvenience in arriving at the equity of the case made by their dealings. That case is such a one as a complainant might well be permitted to present for alternative relief, and, however urgent his prayer might be for the one of these alternatives, a court of equity would be slow to deny him the other in case that which he most earnestly sought could not be granted, or to adjudge that he had abandoned all claim to the one by making a claim to the other that could not be allowed. We therefore conclude that the contention that the complainant by the amended bill had abandoned his right to relief against Milner is not well taken. The foregoing suggestions substantially dispose of appellant Milner's assignment of errors.

The declaration of trust, bearing even date with the conveyance of Miller's interest to Caldwell, after reciting that conveyance, and describing the property conveyed, provides that Caldwell is to man-

age and control the property, and to lease or sell the same, whenever, in his opinion, it is advisable; and the net profits arising from the rent or sale thereof, after deducting all expenditures on account of the same, with interest, and a reasonable compensation to Caldwell for managing the same, are to be divided between the parties in the proportion of one-third to Miller and two-thirds to Caldwell, concluding in these words: "It is agreed between us that if either of us wishes to sell his interest in the lands mentioned in the foregoing instrument, except section 17, which has already been sold, and can get not less than $25 per acre therefor from a purchaser who wishes to buy all of our interests, then, and in that case, we agree to sell the whole at price offered per acre, not less than $25 per acre, or to buy each other out at price so offered, but at no less price, unless otherwise mutually agreed upon between us." It is not shown or claimed that Caldwell had any opportunity which he should have improved to lease the lands in question, or to sell the same at any price. It is shown that about 18 months after he received the conveyance from Miller he paid $3,726 to consummate Miller's original purchase of sections 9, 17, and 19. Section 17 had been sold at the price of $25 per acre, and the proceeds equally divided between Miller, Caldwell, and Milner, each of whom, as between them, was liable for his distributive share of the unpaid balance of the purchase money for that section, as well as for the unpaid balance of the purchase money for sections 9 and 19; so that this payment of $3,726 originally contracted by Miller, and which it was absolutely necessary should be paid to consummate the title which he had acquired to the sections named, was made on his behalf to the extent of his interest in the land embraced in all these sections. It appears that he was not called upon then or subsequently to furnish his share of this necessary expenditure. Caldwell held Miller's title, and, if the lands were as valuable as Miller avers that they were and are, was amply secured thereby for the advance he had made, whether it was made by him alone, or, as Milner avers, was made with Milner's money. At this time Caldwell was actively engaged in the conduct of many large business enterprises, and continued to be so engaged up to and after the time of his settlement with Milner. That settlement covered accounts between 15 different firms or corporations in which Milner and Caldwell were large, and probably controlling, stockholders; and also covered all claims, charges, and accounts held, owned, or controlled by either of them against the other, arising out of or connected with their joint corporate or co-partnership transactions and investments in coal mining and in coal, mineral, and other lands in the county of Jefferson, state of Alabama. Milner, in his testimony, says that he took three accountants, and went over the business himself, and made out a settlement from the books, which brought Caldwell in debt to the amount of $80,000; that the whole volume of the transactions and accounts amounted to $750,000; that he (Milner) claimed a balance due him on settlement of $80,000, and that Caldwell claimed the balance was in his favor to the amount of $40,000; that the Miller land matter in-

volved in this settlement bore the proportion of $1,240 to $750,000; that, after examining all the accounts, and such other evidence as he could gather of their transactions, carefully and honestly, he found that Caldwell owed thereon a balance, including interest, of $80,000, but that, as both of them had grown rich through all these transactions, he felt that he was able to lose the $80,000 which he surrendered in that settlement. It has already been noticed that in the memorandum of settlement signed by both parties December 30, 1884, they use these words: "Milner Coal & R. R. Co. buys Caldwell's third interest in Miller's lands at $1,240." Here are these parties, the one willing to surrender $80,000, and the other yielding up a claim of $40,000, in order to reach a final settlement and full separation of all their interests. Caldwell, by referring to his interest in the Miller lands as a one-third interest, must be taken to show conclusively that at that time he claimed no larger interest, and Milner must equally be charged with notice that Caldwell's interest therein was only a one-third interest. If the deed of October 11, 1886, made in connection with this settlement, has the effect, as to third parties, to convey the Miller interest in these lands to John T. Milner, so that he could have conveyed them to a bona fide purchaser for value, without notice, and thereby devest Miller's interest in the lands, he has not done so, and Miller has received no injury. If the conveyance is to be thus construed, it did no more than to transfer to Milner, who already held in his own right a one-third interest in the lands, and who was thereby receiving in his own right Caldwell's one-third interest therein, the additional one-third belonging to Miller, with such notice of Miller's interest as charged Milner with the same trust with which Caldwell had been charged. There had been nothing in the dealings between Caldwell and Miller to impose upon Caldwell the obligation to continue·indefinitely in the discharge of the trust he had accepted from Miller. Caldwell insists that it was never his intention to transfer more than his own undivided one-third interest in these lands to Milner, that at the time of the execution and delivery of the deed he was not aware that its terms could be construed into granting more than the legal and equitable interest which he had in the land; and, the condition of the parties all considered, it seems to us that this contention on his part is well founded. It is manifest that as soon as he ascertained that Milner was claiming that he had become the owner of Miller's interest in the lands he urged this view of the transaction on Milner, and so strenuously that, while Milner then claimed to be the bona fide purchaser of the lands without notice of any equity or claim of Miller's, and to be the beneficial owner himself of all the interest in the lands, in consideration of the premises he contracted with Caldwell in writing dated May 25, 1888, to answer Miller's claim, and to hold Caldwell harmless. It is to be observed that this transaction occurred more than 18 months before the bringing of this suit. It is not relied upon by the parties, or introduced with the view to do more than to show that at that time it was not Caldwell's understanding that he had, by the conveyance of October 11,

1886, granted to Milner anything more than his own one-third interest in the Miller lands, or that he had sold the Miller interest to Milner at any price. It appears to us, from a consideration of the whole evidence, that the proof in this case is insufficient to charge Caldwell in equity with the sum of $25 per acre for 466⅔ acres, the aggregate amount of Miller's one-third interest in the 160 acres of section 5 and the 1,240 acres in sections 9 and 19, and that the proof is fully sufficient to show that in equity Miller's estate is still the owner of the one-third interest in these lands which Miller, before October 11, 1886, and up to that time, is admitted to have owned, and that the apparent full legal title of Milner to these lands is held by him subject to this equity held by Miller's estate. This equitable interest is subject to certain charges. The original bill prayed that Milner be decreed to account for the rents, issues, and profits before one of the masters of the court, allowing him credit for all taxes and other necessary expenses in caring for the property; and the amended bill prays for a like accounting against Caldwell, and that he be allowed credit for complainant's unpaid share, if any, of the purchase money of the lands, with lawful interest thereon. The original bill was filed December 28, 1889, and the amended bill just quoted was filed June 27, 1892. The proof shows that there have been no rents, issues, and profits out of the lands, and that there remains unpaid $1,242 as the complainant's share of the purchase money paid by Caldwell May 1, 1877, which, with lawful interest thereon from May 1, 1877, to December 28, 1889, constituted an equitable lien on the equitable interest of the complainant in the lands at the time of the institution of this suit. It seems to us that the conduct of the dealings between these parties, and the conduct of this litigation, and the offer of the original bill to allow credit for all taxes and other necessary expenses in caring for said property, constrained the court to arrest the running of interest on this distributive share of the unpaid purchase money at the time of the filing of the original bill in this case. We therefore conclude that John T. Milner holds the lands described in the pleadings, subject to the complainant's equitable right therein, to the extent of an undivided one-third interest, and that this equitable right is subject to the charge of $1,242, with interest thereon from the 1st day of May, 1877, to the 28th day of December, 1889. It follows that the decree appealed from must be reversed, and this suit is remanded to the circuit court, with directions to proceed therein in accordance with the views expressed in this opinion, and as equity may require.